FILED

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA 2016 DEC 22  PM 2: 13
FORT MYERS DIVISION

U.S. DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS, FLORIDA

CHARLES W. BAUER,

     Plaintiff,

v.                                                    Case No:  2:15-cv-721-FtM-99MRM

                                    **FILED UNDER SEAL**

COMMISSIONER OF SOCIAL
SECURITY,

     Defendant.

_____/

## SEALED REPORT AND RECOMMENDATION

     Pending before the Court is Defendant Commissioner of Social Security's

("Commissioner") Opposed Motion to Dismiss Pursuant to Rule 12(b)(1) of the Federal Rules of

Civil Procedure (Doc. 19) filed on March 8, 2016.  Plaintiff Charles W. Bauer filed a

Memorandum in Opposition to Defendant's Motion to Dismiss (Doc. 37) on June 7, 2016.  Both

parties attached a number of exhibits to their filings.  (*See* Doc. 19, Ex. A; Doc. 37, Ex. 1, A-BB;

Doc. 39, Ex. CC-DD).[1]  Plaintiff brings this action to review the decision of the Commissioner

by the Appeals Council dated September 25, 2015, asserting that his retirement benefits were not

correctly calculated.  (*See* Doc. 6 at ¶ 11).

     Plaintiff asserts, *inter alia,* that the Social Security Administration improperly reduced

his retirement benefits by applying the Windfall Elimination Provision ("WEP"), 42 U.S.C. §

415((7)(A).  (Doc. 6 at ¶ 21).  Plaintiff requests, *inter alia,*  that the Court reverse the decision of

---

[1] Plaintiff's Memorandum in Opposition (Doc. 37) and attached exhibits were filed under seal to
protect confidential information contained in those documents.  Because this Report and
Recommendation contains some of the confidential information, the Report and
Recommendation shall also be filed under seal.

the Appeals Council dated September 25, 2015, remand this matter to the Social Security Administration with instructions that Plaintiff's benefits are not to be reduced by the WEP formula, and reimburse Plaintiff for the prior WEP formula deductions. (Doc. 6 at 14-15).

For the reasons that follow, the Undersigned respectfully recommends that the Motion to Dismiss (Doc. 19) be granted.

## I.     Background

### A. WEP and *Petersen v. Astrue*

For ease in understanding the issues raised, the Court includes the following explanation of the WEP formula, *Petersen v. Astrue*, 633 F.3d 633 (8th Cir. 2011), Acquiescence Rule 12-1(8), and POMS RS 00605.380. In 1983, Congress enacted the WEP formula as to Social Security benefits "to eliminate the unintended 'double dipping' that accrued to workers who split their careers between employment taxed for Social Security benefits ('covered') and employment exempt from Social Security taxes ('noncovered')." *Stroup v. Barnhart*, 327 F.3d 1258, 1259 (11th Cir. 2003). Prior to the WEP being enacted, the benefits calculation was completed regardless of whether the earnings were covered or noncovered. *Id.* The result was that an individual who received wages in both covered and noncovered jobs would receive full Social Security benefits in addition to whatever pension benefits were provided by the noncovered employment. *Id.* The WEP, as codified at 42 U.S.C. § 415(a)(7)(A), provides that the primary insurance amount for individuals with both covered and noncovered wages will be computed using a modified formula. *Id.*

The WEP formula has exceptions. Plaintiff asserts that the exception that applies to his retirement benefits is that the WEP formula is not to be used to reduce benefits if a claimant is receiving "'a monthly periodic payment . . . based wholly on service as a member of a uniformed

service.'"  42 U.S.C. § 415(a)(7)(A).  Plaintiff asserts that his "noncovered" employment was as a full-time military reservist dual status air technician for the Air National Guard, which required Plaintiff to wear a uniform daily and be subject to deployment.  (Doc. 37 at 3).  Plaintiff claims that he should be categorized as a "member of a uniformed service" and, thus, not subject to the WEP formula.  (Doc. 37 at 4).

Although Plaintiff agrees that *Petersen v. Astrue*, 633 F.3d 633, 635-36 (8th Cir. 2011) – later addressed in Acquiescence Rule 12-1(8) – does not apply to him, it is instructive for background purposes to mention *Petersen*.  *Id.* at 635.  In *Petersen*, Peterson, a former civilian military technician with the Nebraska Air National Guard, brought suit against the Commissioner of Social Security, alleging that he was entitled to receive an exception to the WEP deduction to his retirement benefits.  *Id.* at 635.  The Eighth Circuit upheld the District Court's determination that Petersen, as a civilian member of the Nebraska Air National Guard, was entitled to an exemption from the WEP formula for his benefits.  *Id.* at 637-38.  The Eighth Circuit found that even though Petersen was a civilian employee of the Nebraska Air National Guard, the Nebraska Air National Guard is a "uniformed service" within the meaning of the statute and, thus, Petersen's retirement benefits from the Nebraska Air National Guard were exempted from the WEP formula.  *Id.* at 637.  Some of the Eighth Circuit's consideration were that:  (1) neither party disputed that the Nebraska Air National Guard is a "uniformed service;" (2) Petersen's pension was based entirely on his service as a National Guard technician; (3) as a National Guard technician, Petersen was required to maintain his membership in the National Guard; (4) Petersen had a military grade for his position; and (4) Petersen was required to wear a uniform to perform his duties.  *Id.*

Following *Petersen*, the Social Security Administration addressed *Petersen* in Acquiescence Ruling ("AR") 12-1(8), entitled "Whether a National Guard Technician Who Worked in Noncovered Employment is Exempt from the Windfall Elimination Provision (WEP)—Title II of the Social Security Administration." AR 12-1(8). The issue was "[w]hether a National Guard technician who worked in noncovered employment under the Civil Service Retirement System (CSRS) is subject to the WEP." AR 12-1(8). AR 12-1(8) provides that

> Social Security old-age or disability applicants and beneficiaries who receive a CSRS pension based on noncovered work as dual status National Guard technicians, and who are permanent legal residents of a State within the Eighth Circuit, should have their Social Security benefits computed using the normal PIA, rather than the WEP PIA described in 42 U.S.C. 415(a)(7) of the Act. A decisionmaker should not apply this AR to an applicant or beneficiary who is not a permanent legal resident of a State within the Eighth Circuit at the time of making the determination or decision to apply the WEP. Before we determine that the WEP does not apply, we must have evidence that an applicant's or beneficiary's CSRS pension is based on service as a dual status civilian technician with the National Guard.

AR 12-1(8).

POMS RS 00605.380 addresses how the *Petersen* Acquiescence Ruling 12-1(8) affects the application of the WEP formula to the retirement benefits of National Guard technicians holding dual status as civilian federal employees and military members of the National Guard residing in the Eighth Circuit. POMS RS –0605.380.[2] The Social Security Administration determined that it would no longer apply the WEP formula to claimants or beneficiaries that meet the *Petersen* criteria. *Id.* "If we made an initial determination or appeal decision to apply WEP on or after February 3, 2011, we will remove the WEP if the beneficiary meets the

---

[2] The SSA promulgated POMS as "publically available operating instructions for processing Social Security claims." *Wells v. Comm'r of Soc. Sec.*, 430 F. App'x 785, 786 (11th Cir. 2011) (citations omitted). These administrative interpretations are not the product of formal rulemaking and, thus, although POMS may be persuasive, they do not have the force of law. *Id.* (citations omitted).

*Petersen* criteria and requests a readjudication of the WEP determination or decision." *Id.* The Social Security administration will not apply the WEP if the following criteria are met:

o the beneficiary receives a CSRS pension based wholly on service as a dual status civilian technician for the National Guard;

o the beneficiary has his permanent legal residence in AR, IA, MN, MO, NE, ND, or SD at the time we make the WEP determination or decision; and

o we make the WEP initial determination or appeal decision on or after February 3, 2011.

*Id.*

## B. Factual and Procedural Background

The Amended Complaint (Doc. 6) provides certain facts for consideration of the claim raised by Plaintiff. Plaintiff provides a complete factual and procedural background in his Memorandum in Opposition to Defendant's Motion to Dismiss (Doc. 37). For the purposes of providing the factual and procedural background for the Opposed Motion to Dismiss (Doc. 6) only, the following are the background facts.[3]

### 1. Factual Background

Plaintiff served four (4) years in active duty with the United States Air Force, and thirty-three (33) years as a "military reservist." (Doc. 37 at 3). Plaintiff's exemplary service encompassed being a full-time "military reservist," dual status air technician for the Air National Guard. (Doc. 37 at 3). Plaintiff claims that as military reservist, dual status air technician for the Air National Guard, he was required to wear his military uniform daily and was deployable. (Doc. 37 at 3). Plaintiff was under the control of the United States Department of Defense from

---

[3] As discussed *infra*, the Commissioner attacks Plaintiff's subject-matter jurisdiction based on a factual attack to subject-matter jurisdiction. Thus, matters outside the pleadings may be considered. *See Lawrence v. Dunbar*, 919 F.2d 1525, 1528-29 (11th Cir. 1990). Further, none of these facts appear in dispute for the purposes of the Opposed Motion to Dismiss (Doc. 19).

January 1969 through June 1995, when he was honorably discharged from his military reservist dual status position with the Air National Guard. (Doc. 37 at 3-4).

Plaintiff applied for early old age retirement benefits at age sixty-two (62) in 2001. (Doc. 37 at 4). Plaintiff claims that the Social Security Administration ("SSA") failed to input his correct taxed earnings from his work for the United States Department of Defense. (Doc. 37 at 4). Thus, the SSA computed Plaintiff's benefits to be an amount much lower than Plaintiff claims he is entitled. (Doc. 37 at 4). Plaintiff claims that his retirement benefits were subject to the WEP formula, codified in 42 U.S.C. § 415(7)(A).

In addition to being penalized for opting for early retirement, Plaintiff also claims that the SSA failed to provide notice that his retirement benefits were being reduced by the WEP formula. (Doc. 37 at 4). In 2012, Plaintiff learned, through counsel for the National Guard, that he was exempt from the WEP formula as a military reservist, dual status technician with the Air National Guard. (Doc. 37 at 5). Plaintiff learned that the SSA wrongfully applied the WEP formula to his retirement benefits. (Doc. 37 at 5). At that point, Plaintiff began attempting to exhaust his administrative remedies under the SSA to attempt to correct the errors in calculation and the errors in applying federal laws. (Doc. 37 at 5).

## 2. Procedural Background

Plaintiff resides in Lee County, Florida. (Doc. 6 at ¶ 8). Sometime in 2012, he began his attempt to exhaust his administrative remedies by contacting the SSA's Office in Fort Myers. (Doc. 6 at ¶ 8; Doc. 37 at 5). Plaintiff contacted the SSA in Birmingham, Alabama, requesting that SSA correct its error of wrongfully applying the WEP formula to Plaintiff's retirement. (Doc. 37 at 5). Plaintiff claims his request was based upon federal law and not upon AR 12-1(8). (Doc. 37 at 5). The Birmingham Office of the SSA sent Plaintiff forms to complete for a

Request Reconsideration. (Doc. 37 at 6). On November 6, 2012, Plaintiff completed the forms and returned them to the Birmingham Office. (Doc. 37 at 6).

On May 6, 2013, Plaintiff went to the SSA office in Fort Myers for a scheduled review of Plaintiff's Request for Reconsideration. (Doc. 37 at 6). Plaintiff requested a copy of his entire Social Security file and learned that it had been destroyed by SSA. (Doc. 37 at 6-7). SSA provided a "Military Service and Windfall Elimination Input" printout as the file but according to Plaintiff, this document lacked clarity. (Doc. 37 at 6-7, Ex. D). The Fort Myers Office of SSA refused to remove the WEP deduction from Plaintiff's retirement benefits. (Doc. 37 at 7). Plaintiff contacted SSA's National Headquarters by telephone in May 2013 advising of the refusal to remove the WEP deduction from his retirement benefits. (Doc. 37 at 7). On June 6, 2013, the National Headquarters of SSA remanded Plaintiff's case back to the Fort Myers office for a representative to contact him to help him file a written request for a benefit change. (Doc. 37 at 8).

On June 10, 2013, Plaintiff completed and returned a "Statement of Claimant or Other Person" form, explaining that the WEP formula was inapplicable to his retirement benefits. (Doc. 37 at 8). On August 28, 2013, Plaintiff received a letter denying his Request for Reconsideration. (Doc. 37 at 9, Ex. K). The letter indicated that the SSA would not change its earlier decision because it made that "decision before February 3, 2011. This is the date the United States Court of Appeals for the Eighth Circuit issued its decision in Petersen v. Astrue." (Doc. 37, Ex. K).[4] The letter included language that the earlier decision "remains the final decision of the agency in your case." (Doc. 37, Ex. K).

---

[4] *See Petersen v. Astrue*, 633 F.3d 633 (8th Cir. 2011).

On September 27, 2013, Plaintiff filed a Request for Hearing and then a second Request for Hearing on January 17, 2014. (Doc. 37 at 9-10). On January 9, 2014, SSA granted Plaintiff's Request for Hearing. (Doc. 37 at 10, Ex. N). On August 6, 2014, SSA notified Plaintiff that his file was ready for review, and on December 11, 2014, SSA sent Plaintiff a Notice of Hearing for January 28, 2015. (Doc. 37 at 10).

On January 28, 2015, Plaintiff and Plaintiff's wife, Mrs. Bauer, attended a hearing before Administrative Law Judge Maria C. Northington ("ALJ"). (Doc. 37 at 11). They presented evidence concerning federal laws and Plaintiff's military status as a dual status technician. (Doc. 37 at 11). On March 10, 2015, the ALJ issued a fully favorable decision. (Doc. 37 at 11; 19-1 at 7-10). The ALJ found:

> that the windfall elimination provision does not apply to the claimant's exemplary military and dual status employment. The undersigned finds that the Petersen v. Astrue is not an argument or applicable in this case. [sic] That said, it seems that Petersen did address the same class of citizens that the claimant is a part of and it seems unequal to the undersigned why some citizens in the same and similar circumstances as the claimant get an exemption in a handful of states, but not in other states, especially since the SSA retirement system is a Federal program. What the courts rule in one circuit and the Agency accepts as a valid legal precedent by SSA, as in the Petersen decision, should be applied across the board to all states.

(Doc. 19-1 at 10).

On March 30, 2015, Rose Mary Buehler, Assistant Regional Commissioner, Processing Center Operations issued a Memorandum to the OHA, Office of the Director regarding "Removal of Windfall Elimination Provision in the Calculation of Benefits; Claimant:  Charles William Bauer." (Doc. 19-1 at 12-13). Ms. Buehler found the decision of the ALJ to be "contrary to the law and regulations." (Doc. 19-1 at 12). Ms. Buehler explained that Plaintiff

> has been entitled to reduced retirement benefits with a month of entitlement of October 2001. The claimant is entitled to a non-covered federal pension from Office of Personnel Management since July 1, 1995. Eligibility for the pension was September 1994. The claimant has 11 Yocs [years of coverage] established based

on certified earning record.   Claimant has lived in Florida since his date of entitlement.

The Administrative Law Judge found that the windfall elimination provision does not apply to the claimant's military and dual status employment. The decision stated that a payment based wholly on service as a member of a uniformed service, it did not constitute employment and should be computed or recomputed. The decision also states that the claimant wore a military uniform for 30 years and was deployable. The ALJ found that these facts gave the claimant more military status than civilian, consequently, the windfall provision does not apply to the claimant's military and dual status employment. The ALJ also found that Petersen v. Astrue is not applicable. The ALJ stated that the Petersen case did address the same class of citizens that the claimant is a part of – what the courts rule in one circuit and the Agency accepts as a valid legal precedent, should be applied to all states.

We do not believe the determination was correct. Per RS 00605.360, the Social Security Amendments of 1983 (PL 98-21) includes a provision that eliminates "windfall["] Social Security benefits for retired and disabled workers receiving pensions from employment not covered by Social Security.  WEP is applicable when a worker becomes eligible for benefits after 1985 and is entitled to a pension for which he or she first became eligible for after 1985, and the pension is based in whole or in part on earnings in employment, which were not covered by Social Security.

Per RS 00605.383, wep no longer applies to the benefits of retired or disabled workers receiving military pensions based, in part, on inactive duty from 1957 to 1987.  WEP will not apply because of pensions based on military reserve service before 1988 and after 1955, bu[t] may still apply because of the receipt of another non-covered pension.

Per RS 00605.380 – Petersen AR criteria is met when the claimant receives a CSRS pension based wholly on service as a dual status civilian technician for the National Guard, the beneficiary has permanent legal residence in the Eighth Circuit, and we make the WEP initial determination or appeal decision on or after February 3, 2011.

(Doc. 19-1 at 12-13).

On May 6, 2015, the Appeals Council sent Plaintiff a Notice of Appeals Council Action, indicating that it was reviewing the ALJ's decision. (Doc. 37, Ex. U).  The Appeals Council determined that there was an error of law in the ALJ's decision. (Doc. 37, Ex. U at 1).  It planned to dismiss the request for hearing filed on September 30, 2013. (Doc. 37, Ex. U at 2). The Appeals Council explained that Plaintiff applied for retirement insurance benefits on July 15, 2001, and began receiving benefits. (Doc. 37, Ex. U at 2).  Plaintiff requested

reconsideration of the WEP on November 8, 2012, eleven years after he was awarded retirement benefits. (Doc. 37, Ex. U at 2). Even though normal time limits do not apply to *Petersen v. Astrue* cases, Plaintiff does not live in the Eighth Circuit and, thus, *Petersen v. Astrue* does not apply to him. (Doc. 37, Ex. U at 2). The Appeals Council informed Plaintiff that on August 28, 2013, the Administration notified Plaintiff that *Petersen* did not apply in his case. (Doc. 37, Ex. U at 2). Further, this notice did not contain appeal rights and was not a reconsideration determination. (Doc. 37, Ex. U at 2). The Appeals Council noted that Plaintiff requested a hearing because the Administration declined Plaintiff's reconsideration request. (Doc. 37, Ex. U at 2). The Appeals Council determined that the ALJ correctly determined that *Petersen* did not apply in Plaintiff's case, but erred in reopening the case as the time period for reopening had lapsed. (Doc. 37, Ex. U at 2). The Appeals Council found the ALJ's decision

> not substantively correct, as the WEP does apply to your benefits. Finally, the Administrative Law Judgment should have dismissed the case based on 20 CFR 404.903(o), which states that an action denying your request to readjudicate your claim and apply an Acquiescence Ruling is not an initial determination subject to judicial review. The Administration denied your request to readjudicate your claim and apply Acquiescence Ruling 12-1(8), *Peters[e]n v. Astrue*; therefore, the Administrative Law Judge should have dismissed the hearing request. The Appeals Council can dismiss the hearing request for any reason that the Administrative Law Judge could have dismissed (HALLEX 1-3-4-20; Social Security Ruling 95-2c). Therefore, the Appeals Council plans to vacate the decision and dismiss the hearing request.

(Doc. 37, Ex. U at 2). The Appeals Council allowed Plaintiff to ask to appear before the Appeals Council and to provide more evidence or a statement about the facts and law of his case within thirty (30) days from the date of the letter. (Doc. 37, Ex. U at 2).

In response, Plaintiff submitted a formal request for appearance and a Memorandum of Law on May 14, 2015. (*See* Doc. 37, Ex. W). Plaintiff filed an Amended Memorandum of Law and New Evidence on May 18, 2015. (*See* Doc. 37, Ex. X). On June 9, 2015, the Appeals

Council denied Plaintiff's request for appearance. (Doc. 37, Ex. Y).  The Appeals Council

allowed Plaintiff an additional thirty (30) days to submit additional information. (Doc. 37, Ex. Y

at 1).  In response, on July 1, 2015, Plaintiff submitted a Second Amended Memorandum of Law

and New Evidence. (*See* Doc. 37, Ex. Z).

On September 25, 2015, the Appeals Council issued an Order dismissing the hearing

request filed on September 30, 2013. (Doc. 19-1, Ex. 4 at 3).[5]  The Appeals Council summarized

the history of the case by stating that Plaintiff applied for retirement insurance benefits on July

15, 2011, and began receiving benefits. (Doc. 19-1, Ex. 4 at 2).[6]  Plaintiff requested

reconsideration of his benefits calculation regarding the WEP on November 8, 2012, eleven

years after he was awarded retirement benefits. (Doc. 19-1, Ex. 4 at 2).  The Appeals Council

stated that normal time limits do not apply to *Petersen v. Astrue* cases, but this is not a *Petersen*

case because Plaintiff does not reside in the Eighth Circuit. (Doc. 19-1, Ex. 4 at 2).  On August

28, 2013, the Administration notified Plaintiff that *Petersen* did not apply to his case and that the

notice did not include the right to appeal. (Doc. 19-1, Ex. 4 at 2).  Plaintiff requested a hearing

because "'the Administration declined the reconsideration request.'" (Doc. 19-1, Ex. 4 at 2).  On

March 10, 2015, an ALJ issued a favorable decision finding that Plaintiff's benefits were not

subject to the WEP. (Doc. 19-1, Ex. 4 at 2).  The ALJ found *Petersen* did not apply but also

found that the WEP did not apply to Plaintiff's "dual status employment." (Doc. 19-1, Ex. 4 at

2).  The Appeals Council determined that the ALJ correctly determined that *Petersen* did not

---

[5] Exhibit 4 is not dated or signed. (*See* Doc. 19-1, Ex. 4).  Plaintiff contends that this Order was
dated September 25, 2015. (*See* Doc. 37 at 14).  The Court will utilize this date for the purposes
of the Motion to Dismiss.

[6] Although much of the Order contains the same language as the Notice of Appeals Council
Action dated May 6, 2015, the Court includes the language from the Appeals Council's Order for
completeness. (*See* Doc. 37, Ex. U; Doc. 19, Ex. 4).

apply to Plaintiff's case and, thus, the Appeals Council determined that Plaintiff's case could not

be reopened because the period to reopen the case had lapsed, citing 20 C.F.R. § 404.988. (Doc.

19-1, Ex. 4 at 2). Further, the Appeals Council found the ALJ's decision was "not substantively

correct, as the WEP does apply to the claimant's benefits." (Doc. 19-1, Ex. 4 at 2). Lastly, the

Appeals Council determined that the ALJ should have dismissed the case based on 20 C.F.R. §

404.903(o), which states that an action denying a request to readjudicate a claim and apply an

Acquiescence Ruling [the *Petersen* case] "is not an initial determination subject to judicial

review. The Administration denied the claimant's request to readjudicate his claim and apply

Acquiescence Rule 12-1(8), *Peterson* [sic] *v. Astrue*; therefore, the Administrative Law Judge

should have dismissed the hearing request." (Doc. 19-1, Ex. 4 at 2-3). The Appeals Council

determined that it can dismiss a hearing request for any reason an ALJ could have dismissed it

and, thus, it dismissed the request for hearing filed on September 30, 2013, citing HALLEX 1-3-

4-20 and SSR 95-2c. (Doc. 19-1, Ex. 4 at 3). The Appeals Council found that "[b]ased upon the

dismissal of the request for hearing, the decision of March 10, 2015 by the Administrative Law

Judge is of no effect." (Doc. 19-1, Ex. 4 at 3). Along with this Order, the Appeals Council sent

a Notice of Order of Appeals Council Dismissing Request for Hearing. (Doc. 19-1, Ex. 4 at 2).

In the Notice of Order, Gabriel E. DePass, Administrative Appeals Judge stated, "[w]e have

dismissed your request for hearing. In the enclosed order, we explain why we did this. Our

action is *final and not subject to further review*."[7] (Doc. 19-1, Ex. 4 at 1) (emphasis added).

## II.   Motion to Dismiss

### A.  Motion to Dismiss Standard

---

[7] The Notice of Order of Appeals Council Dismissing Request for Hearing is not dated. (*See* Doc. 19-1, Ex. 4 at 1).

Federal courts are courts of limited jurisdiction.  "[B]ecause a federal court is powerless to act beyond its statutory grant of subject matter jurisdiction, a court must zealously insure that jurisdiction exists over a case, and should itself raise the question of subject matter jurisdiction at any point in the litigation where a doubt about jurisdiction arises." *Smith v. GTE Corp.*, 236 F.3d 1292, 1299 (11th Cir. 2001).  The burden of establishing the existence of federal subject-matter jurisdiction is with the party that brings the claim. *Sweet Pea Marine, Ltd. v. APJ Marine, Inc.*, 411 F.3d 1242, 1248 n.2 (11th Cir. 2005).

Attacks on subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1) come in two forms: (1) facial attacks and (2) factual attacks. *Morrison v. Amway Corp.*, 323 F.3d 920, 924 n.5 (11th Cir. 2003).  A facial attack challenges the complaint on its face and "requires the court merely . . . look and see if the plaintiff has sufficiently alleged a basis for subject matter jurisdiction." *Stalky v. Orlando Re'l Healthcare Sys.*, 524 F.3d 1229, 1232-33 (11th Cir. 2008).  In a facial attack, the Court accepts as true all of the allegations of the complaint and construes them in a light most favorable to the plaintiff. *Sea Vessel Inc. v. Reyes*, 23 F.3d 345, 347 (11th Cir. 1994).

By contrast, a factual attack challenges "the existence of subject matter jurisdiction in fact, irrespective of the pleadings, and matters outside the pleadings, such as testimony and affidavits are considered." *Lawrence v. Dunbar*, 919 F.2d 1525, 1528-29 (11th Cir. 1990) (citation omitted).  In deciding a factual attack, "'no presumptive truthfulness attaches to plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims.'" *Id.* (citation omitted).

13

## B. Analysis

### 1. Subject Matter Jurisdiction

Plaintiff seeks judicial review of the September 25, 2015 order by the Appeals Council dismissing Plaintiff's request for a hearing and giving no effect to the prior decision of the ALJ. (Doc. 6 at ¶ 11). The Commissioner asserts, *inter alia,* that: 1) the Appeals Council's order dismissing the request for hearing is not subject to judicial review; and 2) Plaintiff never received an initial determination and never received a final decision from the Commissioner subject to review within the meaning of 42 U.S.C. § 405(g). (Doc. 19 at 7, 8, 10). The sole issue for the Court to determine at this stage in the litigation is whether the Court has subject-matter jurisdiction to resolve the merits of this case.

Section 405(g) provides in relevant part:

> Any individual, after any *final decision of the Commissioner of Social Security made after a hearing* to which he was a party, irrespective of the amount in controversy, may obtain a review of such decision by a civil action commenced within sixty days after the mailing to him of notice of such decision or within such further time as the Commissioner of Social Security may allow. Such action shall be brought in the district court of the United States for the judicial district in which the plaintiff resides. . . . The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing.

42 U.S.C.A. § 405(g) (emphasis added).

Under Section 405(g), a district court has jurisdiction to review a *final* decision made by the Commissioner after *hearing. See Bello v. Comm'r of Soc. Sec.*, 460 F. App'x 837, 839 (11th Cir. 2012) (emphasis added) (citing 42 U.S.C. § 405(g)); *Cash v. Barnhart*, 327 F.3d 1252, 1255 (11th Cir. 2003)). "On its face § 405(g) thus bars judicial review of any denial of a claim of disability benefits until after a 'final decision' by the Secretary after a 'hearing.'" *Mathews v. Eldridge*, 424 U.S. 319, 328 (1976). Implicit in this requirement is

> the principle that this condition consists of two elements, only one of which is purely "jurisdictional" in the sense that it cannot be "waived" by the Secretary in a particular case. The waivable element is the requirement that the administrative remedies prescribed by the Secretary be exhausted. The nonwaivable element is the requirement that a claim for benefits shall have been presented to the Secretary. Absent such a claim there can be no "decision" of any type. And some decision by the Secretary is clearly required by the statute.

*Id.* If the non-waivable element is satisfied, then the Court must consider whether a claimant received a "sufficiently" "final" decision with respect to his "constitutional claim to satisfy the statutory exhaustion requirement." *Id.* at 330. Thus, the Commissioner may waive the exhaustion requirements "if he satisfies himself, at any stage of the administrative process, that no further review is warranted either because the internal needs of the agency are fulfilled or because the relief that is sought is beyond his power to confer." *Id.*; *see also Counts v. Comm'r of Soc. Sec.*, No. 6:09-CV-2157-ORL, 2010 WL 5174498, at *5 (M.D. Fla. Dec. 15, 2010).

The Social Security Act does not define "final decision" "instead leaving it to the Commissioner to give meaning to that term through regulations." *Bello*, 460 F. App'x at 839 (citing *Sims v. Apfel*, 530 U.S. 103, 106 (2000)). To satisfy the requirements of finality, a claimant must pursue all of the four-step administrative review process including: (1) an initial determination; (2) a reconsideration determination; (3) a hearing decision by an ALJ; and (4) a discretionary review by the Appeals Council. *Id.* (citing 20 C.F.R. § 404.900(a)(1)(5) and *Weinberger v. Salfi*, 422 U.S. 749, 763 (1975)). After the foregoing steps of the administrative review process are completed, the Commissioner will have made a "final decision" and it is at that point when a claimant may seek judicial review by commencing an action in federal district court within sixty (60) days after having received notice of the Appeals Council's decision. *See* 20 C.F.R. §§ 404.900(a)(5), 404.981.

Plaintiff has not demonstrated that an "initial determination" by SSA was made in his case or that his case was subject to the administrative review process set forth in 20 C.F.R. § 404.900, *et seq.*  An "initial determination" is defined as a determination that SSA makes about a claimant's "entitlement or [the claimant's] continuing entitlement to benefits or about any other matter, as discussed in § 404.902, that gives [the claimant] a right to further review." 20 C.F.R. § 404.900(a)(1).  Plaintiff has not demonstrated or argued that the SSA's denial of his request for reconsideration, which was filed well beyond 60 days after his receipt of the SSA's notice of benefits amount, constituted an "initial determination" such that the administrative review process set forth in 20 C.F.R. § 404.900 applied.  Thus, the record does not contain evidence that Plaintiff presented his claim for an "initial determination" or that an "initial determination" was made.

Further, 20 C.F. R. § 404.903 provides "[a]dministrative actions that *are not initial determinations* may be reviewed by us, but they are not subject to the administrative review process provided by this subpart, and they are not subject to judicial review.  These actions include, but are not limited to, an action . . . (l) [d]enying your request to reopen a determination or a decision; . . . (o) [d]enying your request to readjudicate your claim and apply an Acquiescence Ruling." 20 C.F. R. § 404.903 (l), (o) (emphasis added).  Generally, courts lack jurisdiction over the Commissioner's decision not to reopen a claim because such a decision is not final within the meaning of 42 U.S.C. § 405(g).  *Loudermilk v. Barnhart*, 290 F.3d 1265, 1268 (11th Cir. 2002).  Thus, Plaintiff's request to reopen the decision as to the calculation of his retirement benefits does not constitute an "initial determination" under the Social Security regulation, is not a part of the administrative process, and is not subject to judicial review.

Further, even though Plaintiff does not claim that Acquiescence Ruling 12-1(8) applies in his case, even if it did apply, a denial of a request to readjudicate Plaintiff's claim based on an Acquiescence Ruling does not constitute an initial determination, is not part of the administrative process, and is not subject to judicial review. *See* 20 C.F.R. 404.903(o). Thus, while the claims to reopen a determination may be reviewed by SSA, they are not subject to the administrative review process or judicial review. *See* 20 C.F.R. § 404.903.

Although much of Plaintiff's very thorough Memorandum in Opposition (Doc. 37) pertains to the merits of Plaintiff's case, Plaintiff does address some of the issue now before the Court as to whether this Court has subject-matter jurisdiction over this case. Plaintiff argues that his claim should be reopened based upon SSA's clerical error in miscalculating his retirement benefits and, thus, this Court has jurisdiction to review the Appeals Council's September 25, 2015 order. (Doc. 37 at 15). Plaintiff contends that throughout the administrative process, he attempted to have the SSA correct its "clerical" errors as to his retirement benefits. (Doc. 37 at 16). Even though Plaintiff began receiving his retirement benefits in 2001, Plaintiff claims that he did not become aware of the discrepancy in the calculation of his retirement benefits until many years later. (Doc. 37 at 17).

Pursuant to 20 C.F.R. § 404.988, a "determination, revised determination, decision, or revised decision may be reopened" within twelve (12) months for any reason; within four (4) years if good cause is shown; and at any time for certain delineated reasons. 20 C.F.R. § 404.988 (a), (b), (c). One such reason to allow reopening at any time is if "[it] is fully or partially unfavorable to a party, but only to correct clerical error or an error that appears on the face of the evidence that was considered when the determination or decision was made." 20 C.F.R. 404.988(c)(8). Plaintiff claims throughout his brief that SSA made a clerical error in

computing his retirement benefits and in applying the WEP formula to his retirement benefits. (*See, e.g.*, Doc. 37 at 1, 2, 5, 6, 7, 15, 17, 18).

However, Plaintiff failed to show how the application of the WEP formula to his retirement benefits is a "clerical error" within the meaning of this regulation. *Black's Law Dictionary* defines "clerical error" as

> an error resulting from a minor mistake or inadvertence and not from judicial reasoning or determination; esp. a drafter's or typist's technical error that can be rectified without serious doubt about the correct reading. Among the numberless possible examples of clerical error are omitting an appendix from a document; typing an incorrect number; mistranscribing or omitting an obviously needed word; and failing to log a call.

*Clerical Error*, Black's Law Dictionary (10th ed. 2014); *see also Liu v. Arrow Fin. Servs., LLC*, No. CIV.A. H-08-3116, 2010 WL 1994190, at *9 (S.D. Tex. May 17, 2010). The application of the WEP formula is not a minor or inadvertent mistake made by clerical staff. Rather, it was a substantive decision by SSA. Thus, the exception for clerical errors to the time limits to reopen a determination does not apply in Plaintiff's case.

In the instant case, Plaintiff waited eleven (11) years before presenting his claim for reconsideration or to reopen regarding the calculation of his retirement benefits. In dismissing Plaintiff's request for hearing, the Appeals Council agreed with the ALJ that *Petersen v. Astrue* did not apply. (Doc. 19-1, Ex. 4 at 2). Plaintiff also acknowledges that *Petersen* does not apply to his case. Thus, while normal time limits to file a reconsideration or to reopen a claim do not apply in *Petersen* cases, these time limits do apply here. (*See* Doc. 19-1, Ex. 4 at 2). The Appeals Council's factual finding is unopposed that: (1) Plaintiff applied for retirement benefits on July 15, 2001; (2), Plaintiff began receiving benefits thereafter; and (3) Plaintiff requested reconsideration of his benefit calculation regarding the WEP on November 8, 2012, eleven (11) years after he was awarded retirement benefits. (*See* Doc. 19-1, Ex. 4 at 2). Thus, Plaintiff's

request for reconsideration or to reopen his claim was untimely and was filed well beyond sixty (60) days after Plaintiff received his notification of his retirement calculation and well past any deadline to file a reconsideration or to reopen a determination.

Accordingly, the Court determines that the decision of the Appeals Council not to reconsider Plaintiff's retirement benefits calculation and dismissing the hearing was not a final decision made after a hearing by SSA subject to review by this Court. None of the steps to exhaust administrative remedies occurred and SSA made no final decision in this action. Accordingly, this Court is without subject-matter jurisdiction under 42 U.S.C. § 405(g) to review the decision of the Appeals Council to dismiss Plaintiff's request for hearing.

## 2. Colorable Constitutional Claim

Plaintiff alleges that this Court has jurisdiction based upon a violation of the Constitution, a violation of Federal law, and a violation of the Due Process Clause. (Doc. 6 at ¶¶ 4, 5, 15-19, 22-25, 29-30, 32-34, 47, 49, 52). Notwithstanding the lack of a final decision after hearing, it is a well-established principle that a decision by the Commissioner is subject to judicial review in two limited instances: (1) where a colorable constitutional claim has been raised; and (2) where the decision is reconsidered to any extent at any administrative level.[8] *Loudermilk*, 290 F.3d at 1268; *Califano v. Sanders*, 430 U.S. 99, 109 (1977); *Sherrod v. Chater*, 74 F.3d 243, 245 (11th Cir. 1996). "A claim is not colorable if it 'clearly appears to be immaterial and made solely for the purpose of obtaining jurisdiction or where such a claim is wholly insubstantial or frivolous.'" *Harris v. Bowen*, No. C86-1040A, 1987 WL 123920, at *2 (N.D. Ga. Mar. 26, 1987) (citing *Bell*

---

[8] Plaintiff's claim was considered by the ALJ on the merits. (Doc. 19-1 at 7-11). However, the Appeals Council dismissed Plaintiff's request for hearing and found the ALJ's decision to be of no effect. (Doc. 19-1 at 20). Thus, no decision was reconsidered at any administrative level in this case.

*v. Hood*, 327 U.S. 678, 682 (1946)). "Constitutional questions are unsuited for resolution in the administrative hearing procedures and, therefore, 'access to courts is essential to the decision of such questions.'" *Sherrod*, 74 F.3d at 245 (quoting *Califano*, 430 U.S. at 108).

### a. Due Process

Plaintiff asserts that his due process rights were violated. (Doc. 37 at 46). Procedural due process imposes "constraints on governmental decisions that deprive individuals of 'liberty' or 'property' interests within the meaning of the Due Process clause of the Fifth or Fourteenth Amendment." *Mathews*, 424 U.S. at 332. In certain circumstances, the entitlement to federal benefits, including social security benefits, constitutes a property interest. *Abioro ex rel. J.M.A. v. Astrue*, 296 F. App'x 866, 869 (11th Cir. 2008). "The fundamental requirement of due process is the opportunity to be heard 'at a meaningful time and in a meaningful manner.'" *Mathews*, 424 U.S. at 333. Thus, the Court must consider Plaintiff's allegations to determine if he raised a colorable constitutional claim.

Plaintiff claims that when he initially was to receive his retirement benefits, SSA failed to provide him with a notice that his retirement benefits were being reduced by the WEP formula. (Doc. 37 at 4, 31). Plaintiff attached his Social Security Statement dated June 5, 2001 to his Memorandum. (*See* Ex. A). In the Social Security Statement, it provides that "[f]actors, such as **a pension for work not covered by Social Security, some military service or credit for railroad employment,** may affect your benefit amount." (Doc. 37, Ex. A at 2) (emphasis in original). Further, the Social Security Statement cautioned Plaintiff to "[r]**eview this chart carefully** using your own records to make sure our information is correct and that we've recorded each year you worked. You're the only person who can look at the earnings chart and know whether it is complete . . . **Call us right away** . . . if any earning for years **before last year**

are shown incorrectly." (Doc. 37, Ex. A at 3) (emphasis in original). SSA gave Plaintiff notice prior to his receiving his retirement benefits that the amount of his benefits may be reduced due to "a pension for work not covered" and "some military service" and that Plaintiff was instructed to review the amount of his earnings carefully to make sure that they were correct. Further, SSA instructed Plaintiff to notify it if the earnings were not correct.

Moreover, Plaintiff received a Notice of Award dated July 30, 2001. (Doc. 39, Ex. CC). The Notice of Award indicates: (1) that Plaintiff would begin receiving monthly retirement benefits beginning in October 2001; (2) the amount of the award; and (3) that Plaintiff would begin receiving the award sometime around November 21, 2001. (Doc. 39, Ex. CC at 1). The Notice of Award also referred to an enclosed pamphlets. (Doc. 39, Ex. CC at 2). Plaintiff argues that the Notice of Award did not state that his benefits would be reduced by the WEP formula, did not include the referenced pamphlets, and did not clearly state what pensions would affect Plaintiff's retirement benefits. (Doc. 37 at 31-32).

The Notice of Award states the following:

> [w]e reduced the amount of your monthly Social Security benefit beginning October 2001. This is the first month that you are entitled to both Social Security and a pension based on work which is not covered by Social Security. Because of this pension, we must use a special formula to figure your Social Security benefit."

(Doc. 39, Ex. CC at 1). This language put Plaintiff on notice that his Social Security retirement benefits were reduced and that a special formula was used to calculate his benefits because of his pension. The Court agrees that the term "WEP" was not used. However, SSA did notify Plaintiff that his benefits were being reduced and that one reason for the reduction related to the pension he received for non-covered work. Thus, the Court finds that Plaintiff received notice and Plaintiff was on notice that his retirement benefits were being reduced due to a pension that he was also receiving.

As to Plaintiff's argument that he did not receive the allegedly enclosed pamphlets, the Notice of Award "invite[d]" Plaintiff to visit SSA's website for further information and provided telephone numbers to call the SSA as to questions. (Doc. 39, Ex. CC at 3). Thus, Plaintiff had avenues open to him that were clearly set forth in the Notice of Award to find information even if the pamphlets were not attached.

Further, the Notice of Award clearly stated that if Plaintiff disagreed with the decision, then he had the right to appeal. (Doc. 39, Ex. CC at 2). The deadline to appeal was sixty (60) days from the date Plaintiff received the letter. (Doc. 39, Ex. CC at 2). The Notice of Award put Plaintiff on notice that if he disagreed with the award, he could contact the SSA and file an appeal within sixty (60) days of receiving the Notice of Award. The Court finds that the Notice of Award satisfied the due process requirement of notice.

Moreover, Plaintiff fails to allege that the administrative review process was not available to him when he initially received his retirement benefits in 2001. Further, he failed to allege that he sought and was denied administrative review regarding the calculation of his benefits and the reduction of his benefits due to the WEP formula at the time he first received his retirement benefits. Nor did he seek reconsideration when he received his second Notice in May 2002 that his retirement benefits were being marginally increased. (*See* Doc. 39, Ex. DD). Plaintiff sought administrative review for the first time in 2012. Thus, while Plaintiff's request for reconsideration or reopening was denied and his request for hearing was dismissed, Plaintiff has not demonstrated that he was denied an opportunity for a hearing to determine his rightful compensation at the time he began receiving his retirement benefits. Had Plaintiff pursued his opportunity for a hearing when he initially received his benefits – as Petersen did in *Petersen v. Astrue, supra* – Plaintiff could have challenged the application of the WEP formula to his

benefits determination and this Court would have jurisdiction to consider the issue in the event that the Commissioner denied his claim.

Plaintiff asserts that the Court should apply equitable tolling to his case because his Notice did not include language that his benefits were being reduced by the WEP formula. Traditional equitable tolling principles require a claimant to justify an untimely filing by "showing of extraordinary circumstances." *Jackson v. Astrue*, 506 F.3d 1349, 1353 (11th Cir. 2007) (citing *Waller v. Comm'r of Soc. Sec.*, 168 F. App'x 919, 920 (11th Cir. 2006)). In a traditional case, extraordinary circumstances are met, "'where the defendant misleads the plaintiff, allowing the statutory period to lapse; or when the plaintiff has no reasonable way of discovering the wrong perpetrated against [him].'" *Id.* The "'finding of extraordinary circumstances'" is necessary in the Social Security context to equitably toll the SSA's statutory period. *Id.* "And traditional equitable tolling principles require that the claimant demonstrate extraordinary circumstances, such as fraud, misinformation, or deliberate concealment." *Id.* at 1355. In this case, the Court determines that Plaintiff received proper notice as to the calculation of his retirement benefits. Even if the Court found otherwise, Plaintiff failed to show that the SSA committed fraud, provided misinformation, or deliberately concealed information in Plaintiff's case to constitute a situation in which equitable tolling would apply.

Here, Plaintiff received notice that his retirement benefits would be reduced based upon a pension he was to receive at the time that he began receiving retirement benefits. Plaintiff has failed to demonstrate that he was prevented from availing himself of the administrative process at that time, which would have afforded Plaintiff an opportunity for an administrative hearing if SSA denied his claim initially and on reconsideration. Accordingly, Plaintiff failed to present a

colorable constitutional claim on due process grounds that would justify an exception to the jurisdictional requirements of 42 U.S.C. § 405(g).

### b.  Equal Protection

Plaintiff asserts that he was denied equal protection by having his claim treated differently from other dual status technicians in the United States.  Plaintiff also couches his equal protection claim as a discrimination claim.  Courts have an obligation when they apply a rule of law to one litigant to "do so with respect to all others not barred by procedural requirements or res judicata. *James B. Beam Distilling Co. v. Georgia*, 501 U.S. 529, 544 (1991); *see also Harper v. Virginia Dep't of Taxation*, 509 U.S. 86, 97 (1993) (holding that when the Supreme Court "applies a rule of federal law to the parties before it, that rule is the controlling interpretation of federal law and must be given full retroactive effect in all cases still open on direct review").

Here, Plaintiff had his benefits determined initially in 2001.  At the time of that determination, Plaintiff had the opportunity to bring the issues raised here to the SSA for review, and if the outcome was unsatisfactory, to bring an action subject to judicial review of the SSA's determination.  Plaintiff failed to bring this action in a timely manner.  His benefits determination is final, and there is a procedural bar from this Court reconsidering those benefits.

> Moreover, an interpretation that would allow a claimant judicial review simply by filing and being denied a petition to reopen his claim would frustrate the congressional purpose, plainly evidenced in s 205(g), to impose a 60-day limitation upon judicial review of the Secretary's final decision on the initial claim for benefits. Congress' determination so to limit judicial review to the original decision denying benefits is a policy choice obviously designed to forestall repetitive or belated litigation of stale eligibility claims. Our duty, of course, is to respect that choice.

*Califano v. Sanders*, 430 U.S. 99, 108 (1977) (internal citation omitted).  Plaintiff had the same opportunity as all other dual status technicians to appeal his retirement benefits decision within sixty (60) days of receiving the Notice of Award and to bring a claim before the SSA.  Thus,

Plaintiff failed to present a colorable constitutional claim on equal protection grounds that would justify an exception to the jurisdictional requirements of 42 U.S.C. § 405(g).

### III.    Conclusion

The Court determines that it lacks subject-matter jurisdiction to hear this action. Plaintiff failed to exhaust administrative remedies with the SSA and the SSA made no final determination on the merits of the calculation of Plaintiff's retirement benefits. Moreover, Plaintiff failed to establish a colorable constitutional claim.

**IT IS RESPECTFULLY RECOMMENDED:**

The Opposed Motion to Dismiss Pursuant to Rule 12(b)(1) (Doc. 19) be **GRANTED** and this action be dismissed.

Respectfully recommended in Chambers in Ft. Myers, Florida on December 22, 2016.

MAC R. MCCOY
UNITED STATES MAGISTRATE JUDGE

### NOTICE TO PARTIES

A party has fourteen days from this date to file written objections to the Report and Recommendation's factual findings and legal conclusions. A party's failure to file written objections waives that party's right to challenge on appeal any unobjected-to factual finding or legal conclusion the district judge adopts from the Report and Recommendation. *See* 11th Cir. R. 3-1.

Copies furnished to:
Counsel of Record
Unrepresented Parties