UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

CHARLES W. BAUER,

      Plaintiff,

v.                              Case No.:   2:15-cv-721-FtM-29MRM

COMMISSIONER OF SOCIAL
SECURITY,

      Defendant.

_____/

## REPORT AND RECOMMENDATION

Plaintiff Charles W. Bauer appeals from the Social Security Administration's decision to reduce his monthly retirement insurance benefits ("RIB") based upon the windfall elimination provision ("WEP"). (Doc. 63 at 27). Plaintiff requests that the Court remand this matter to the Commissioner for further proceedings. (*Id.*). Plaintiff argues that Social Security Administration ("SSA") incorrectly reduced his RIB by applying the WEP to his earnings when he qualified for the uniformed services exception to the WEP. (*Id.* at 7; Doc. 6 at 1). Plaintiff also asserts that the SSA miscalculated his earnings and his earning should be recalculated to include an additional $55,759.45. (Doc. 63 at 6, 27). Plaintiff filed a Memorandum of Law on February 19, 2019. (Doc. 63). Plaintiff also filed a Reply (Doc. 65).

On April 19, 2019, the Commissioner filed a Memorandum of Law in opposition. (Doc. 64). The Commissioner asserts that SSA correctly reduced Plaintiff's retirement benefits by applying the WEP. (Doc. 64 at 1). The Commissioner argues that Plaintiff's earnings as an Ohio Air National Guard military technician (dual status) were noncovered earnings that are not eligible for an exception to the WEP. (*Id.*). Basically, the Commissioner argues that Plaintiff's

earnings as a military technician (dual status) are not "wholly" based on service as a member of a uniformed service and, thus, do not fall within an exception to the WEP.  (*Id.*).

In the Memorandum of Law in opposition, the Commissioner did not address the issue of whether Plaintiff's earnings were properly calculated by the SSA.  (*See generally* Doc. 64).  To allow both parties the opportunity to explain fully their positions on this issue, the Undersigned entered an Order requiring both parties to file supplemental memoranda directed to the issue of whether the SSA erred in inputting Plaintiff's earnings and whether Plaintiff's RIB should have been recalculated to include additional earnings totaling $55,759.45.  (Doc. 66 at 1-2).  The Commissioner filed a Supplemental Memorandum of Law on June 5, 2019 (Doc. 69) and Plaintiff filed a Reply to Defendant's Supplemental Memorandum of Law on June 18, 2019 (Doc. 72).

For the following reasons, the Undersigned respectfully recommends that the decision of the Commissioner be **AFFIRMED** pursuant to the Social Security Act, 42 U.S.C. § 405(g) as to both issues.

## I.    Background

Plaintiff served four (4) years in active duty with the United States Air Force, and thirty-three (33) years as a "military reservist."  (Doc. 63 at 1).  Plaintiff's exemplary service encompassed being a full-time "military reservist," dual status air technician for the Air National Guard.  (Doc. 63 at 1-2; Doc. 37 at 3).  Plaintiff claims that as a military reservist dual status technician for the Air National Guard he had many duties, including but not limited to being required to wear his military uniform daily, being deployable, having top secret military clearance, having a military driver's license, attending United States Air Force unit training sessions, and being treated as a full-time soldier.  (Doc. 63 at 2-4).  Plaintiff also asserts that he

was subject to discipline under the Uniform Code of Military Judgment. (Doc. 63 at 1, 3-4). Plaintiff claims that he was under the control of the United States Department of Defense from January 1969 through June 1995, when he was honorably discharged from his military reservist dual status position with the Air National Guard. (Doc. 37 at 3-4).

Plaintiff applied for early old age retirement benefits at age sixty-two (62) in 2001. (Doc. 63 at 1). Plaintiff received his RIB, but it was subject to a reduction based upon the WEP. (Tr. at 86-88). In 2012, Plaintiff "was informed by the military, that he was exempt from the WEP." (Doc. 63 at 1). On November 6, 2012, Plaintiff requested reconsideration of his benefits calculation. (Tr. at 335). On August 28, 2013, SSA denied reconsideration. (*Id.* at 300).

Plaintiff requested and received a hearing on January 28, 2015, before Administrative Law Judge Maria C. Northington ("ALJ"). (*Id.* at 356-380). The ALJ issued a fully favorable decision on March 10, 2015, finding that the windfall elimination provision does not apply to Plaintiff's military and dual status employment. (*Id.* at 240-43). On March 30, 2015, SSA's Assistant Regional Commissioner, Rose Mary Buehler, sent a letter indicating that the SSA would not effectuate the decision of the ALJ to remove the WEP, pending further review. (*Id.* at 112-13). This letter also indicated that the ALJ's decision was contrary to law and regulations. (*Id.* at 112). On September 25, 2015, the Appeals Council issued an Order finding that, *inter alia*: (1) the WEP does apply to Plaintiff's benefits; (2) the ALJ should have dismissed the case pursuant to 20 C.F.R. § 404.903(o); and (3) the ALJ should have dismissed the hearing request. (*Id.* at 230). On November 20, 2015, Plaintiff filed a Complaint (Doc. 1) in this Court and on December 7, 2018, Plaintiff filed an Amended Complaint (Doc. 6).

Plaintiff exhausted his administrative remedies as to the WEP issue and now Plaintiff "seeks a judicial review of the application of the WEP to the calculation of his early old age insurance benefits." (Doc. 44 at 21).[1]

## II.    Calculation for Retirement Insurance Benefits

Not all employment earnings are subject to Social Security contributions. *Martin v. Soc. Sec. Admin., Comm'r*, 903 F.3d 1154, 1156 (11th Cir. 2018).[2]   The Social Security Act distinguishes between "covered" and "noncovered" employment. *Id.* (citing 20 C.F.R. § 404.1001(2018)).  "Covered employment" is subject to various Social Security taxes, and "noncovered employment" is exempt from Social Security taxes. *Id.*

Many noncovered positions include a separate annuity or pension. *Id.*  Based upon the SSA's calculations for RIB, an individual who worked in both covered and noncovered jobs might receive both a pension or annuity from the noncovered earnings, and a higher percentage of Social Security benefits than would generally be awarded. (*Id.*).[3]  The WEP "helps eliminate the potential for double-dipping." *Id.*

---

[1]  On April 20, 2018, the presiding trial judge entered an Opinion and Order, finding "subject matter jurisdiction for judicial review does exist" as to the WEP issue and denying the Commissioners Motion to Dismiss.  (Doc. 44 at 21).  The Undersigned separately addresses the issue of exhaustion of remedies as to the calculation of earnings issue.

[2]  The Undersigned relies heavily on *Martin v. Soc. Sec. Admin., Comm'r*, 903 F.3d 1154, 1156 (11th Cir. 2018), a recent Eleventh Circuit case that involves some of the same issues raised here.

[3]  To calculate RIB benefits the SSA adjusts benefits payouts so that individuals with lower average month earnings are entitled to a greater percentage of those earning than an individual with higher earnings.  *Martin*, 903 F.3d at 1156.  Thus, an individual with covered and noncovered earnings may receive a higher percentage of retirement benefits because his covered earnings are much lower than his total earnings from his covered and noncovered employment. *Id.*  The WEP acts to eliminate this discrepancy. *Id.*

In 1983, Congress enacted the WEP formula as to Social Security benefits "to eliminate the unintended 'double dipping' that accrued to workers who split their careers between employment taxed for Social Security benefits ('covered') and employment exempt from Social Security taxes ('noncovered')."  *Stroup v. Barnhart*, 327 F.3d 1258, 1259 (11th Cir. 2003).  The WEP, as codified at 42 U.S.C. § 415(a)(7)(A), modifies the default formula for individuals who receive a monthly payment in whole or in part based upon earnings for noncovered work.  *Martin*, 903 F.3d at 1157.

However, the WEP formula has exceptions.  The primary exception relevant here is subsection 415(a)(7)(A)(III) that provides an exception for any "payment based wholly on service as a member of a uniformed service."  42 U.S.C. § 415(a)(7)(A)(III).  The term "member of a uniformed service" is not defined in this provision, but this provision incorporates definitions from across the United States Code.  *Martin*, 903 F.3d at 1157.  Thus, this terms encompasses members of the Air National Guard.  42 U.S.C. § 410(m) ("The term 'member of a uniformed service' means any person appointed, enlisted, or inducted in a component of the Army, Navy, Air Force, Marine Corps, or Coast Guard (including a reserve component as defined in section 101(27) of Title 38)."  In turn 38 U.S.C. § 101(27) provides that a "reserve component" means "the Air National Guard of the United States."  38 U.S.C. § 101(27)(G).  The issue here is whether this uniformed service exception to the WEP applies to Plaintiff's position as an Ohio Air National Guard military technician (dual status).

### III.    Military Technician (Dual Status)

A "military technician (dual status) is a Federal civilian employee who is employed under certain statutes, is required as a condition of employment to maintain membership in the Selected Reserve, and is assigned to a civilian position as a technician in organizing, administering,

instructing, or training of the Selected Reserve or in the maintenance and repair of supplies or equipment issued to the Selected Reserve or the armed forces."  10 U.S.C. § 10216(a)(1). Military technicians (dual status) are authorized and accounted for as a separate category of civilian employees.  10 U.S.C. § 10216(a)(2).  In addition, while performing duties as a military technician (dual status), an individual must wear the uniform appropriate to the member's grade and component of the armed forces.  32 U.S.C. § 7099(b).  A military technician (dual status) is assigned a civilian position as a technician and is consistently referred to as a civilian employee. *Martin*, 903 F.3d at 1157-58.

### IV.    Standard of Review

A court reviews the findings of fact by the Commissioner for substantial evidence and reviews the Commissioner's legal decisions *de novo*.  *Martin*, 903 F.3d at 1159.  Thus, the Undersigned must review the construction of the uniformed services exception to the WEP *de novo*, subject to the principles of deference to an agency's statutory interpretation.  *Id.*

Recently, the Eleventh Circuit decided the analogous case of *Martin v. Soc. Sec. Admin., Comm'r*, 903 F.3d 1154 (11th Cir. 2018), setting forth the standard of review and deference a court must afford an agency's statutory interpretation.

In *Martin*, the plaintiff, a military technician (dual status) appealed the decision of the SSA to reduce his monthly retirement insurance benefits in accordance with the Social Security Act's windfall elimination provision.  *Id.* at 1155.  The district court affirmed the decision of the SSA that the windfall elimination provision applied to the plaintiff's benefits.  *Id.*  The Eleventh Circuit held that the plaintiff "did not perform his dual status technician employment wholly as a member of a uniformed service.  As a result, benefits based on that employment do not qualify for the exception."  *Id.* at 1168.

The Eleventh Circuit in *Martin* set forth the standard of review of an agency's interpretation of a statute. *Id.* at 1159. The Eleventh Circuit explained that:

> At a minimum, we give an agency interpretation deference under *Skidmore v. Swift & Co.* corresponding to the "thoroughness evident in its consideration, the validity of its reasoning, its consistency with earlier and later pronouncements, and all those factors which give it power to persuade, if lacking power to control." This recognizes an agency's specialized experience and information-seeking capacities, as well as the value of uniformity.

*Id.* (footnotes omitted) (quoting *Skidmore v. Swift & Co.*, 323 U.S. 134, 140 (1944)); (citing *Buckner v. Fla. Habilitation Network, Inc.*, 489 F.3d 1151, 1155 (11th Cir. 2007); *United States v. Mead Corp.*, 533 U.S. 218, 234-35 (2001)).

The *Martin* court considered the two-step framework laid out in *Chevron, U.S.A., Inc. v. National Resources Defense Council, Inc. Id.* (citing *Chevron, U.S.A., Inc. v. National Resources Defense Council, Inc.*, 467 U.S. 837 (1984)). As such, the court considered three different SSA issuances that interpreted the uniformed services exception to the WEP, namely Acquiescence Ruling 12-1(8), POMS RS 00605.380, and an SSA discussion implementing the regulations, 60 Fed. Reg. 56511, 56512 (Nov. 9, 1995). *Id.* at 1160 (footnotes omitted).

Acquiescence Ruling 12-1(8) was in response to *Petersen v. Astrue*, 633 F.3d 633 (8th Cir. 2011),[4] an Eighth Circuit case that held the uniformed services exception applies to dual status technicians. *Id.* The Eleventh Circuit explained that SSA concluded that it would apply

---

[4] In *Petersen*, Peterson, a former dual status technician with the Nebraska Air National Guard, brought suit against the Commissioner of Social Security, alleging that he was entitled to receive an exception to the WEP deduction to his retirement benefits. *Petersen v. Astrue*, 633 F.3d 633, 635 (8th Cir. 2011). The Eighth Circuit upheld the District Court's determination that Petersen, as a civilian member of the Nebraska Air National Guard, was entitled to an exemption from the WEP formula for his benefits. *Id.* at 637-38. The Eighth Circuit found that even though Petersen was a civilian employee of the Nebraska Air National Guard, the Nebraska Air National Guard is a "uniformed service" within the meaning of the statute and, thus, Petersen's retirement benefits from the Nebraska Air National Guard were exempted from the WEP formula. *Id.* at 637

*Petersen*'s interpretation in the Eighth Circuit only and would treat dual status technicians elsewhere as ineligible for the uniformed services exception to the WEP. *Id.* The agency issued a Program Operations Manual System ("POMS"), which sets forth its internal procedures as to the application of the WEP and its exceptions.[5]

The Eleventh Circuit concluded that it need not reach the issue of whether *Chevron, U.S.A.*'s two-step process applied because it concluded "that even under *Skidmore* deference, the SSA has the best reading of the uniformed services exception." *Id.* at 1162.

With this deferential standard of review in mind, the Undersigned turns to Plaintiff's argument that he is entitled to the uniformed services exception to the WEP.

## V.    Analysis as to Whether the Uniformed Service Exemption of the WEP Applies

As in *Martin*, the crux of Plaintiff's argument is that his work as a dual status technician is essentially military in nature and, thus, his employment in this position renders him "wholly . . . as a member of a uniformed service."  (Doc. 63 at 1-3); *see also Martin*, 903 F.3d at 1162 (quoting 42 U.S.C. § 415(a)(7)(A)).  Consistent with the holding in *Martin* and giving the SSA's interpretation deference under *Skidmore*, the Undersigned recommends that the Court affirm the SSA's interpretation.

In *Martin*, the Eleventh Circuit found that the SSA previously considered the issue of whether the WEP applies to dual status technicians and resolved the issue by preserving SSA's longstanding interpretation of the provision that the WEP does apply to dual status technicians benefits based on its reading of the legislative history. *Id.* at 1162-63.  The SSA's POMS

---

[5]  The SSA promulgated POMS as "publicly available operating instructions for processing Social Security claims."  *Wells v. Comm'r of Soc. Sec.*, 430 F. App'x 785, 786 (11th Cir. 2011) (citations omitted).  These administrative interpretations are not the product of formal rulemaking and, thus, although POMS may be persuasive, they do not have the force of law.  *Id.* (citations omitted).

"provides specific, detailed instructions on how to apply the SSA's interpretation [of the WEP provision], especially in light of the *Petersen* decision that governs claims by residents of the Eighth Circuit." *Id.* at 1163 (citing POMS RS-00605.380).  The Eleventh Circuit determined that taking the Acquiescence Ruling 12-1(8) (based on *Petersen*, *supra*) and the POMS RS-00605.380 together, "these considerations reflect a carefully reasoned agency interpretation that meshes with the SSA's overall administration of the Social Security Act—exactly the type of interpretation that warrants a reasonable degree of deference under *Skidmore*.  While this deference may not override our reading of the provision's plain meaning, it will inform our interpretation of any text that is more difficult to untangle." *Id.* (footnote omitted) (citation omitted).

Plaintiff argues that the Social Security Act does not address whether a dual status technician is a member of a uniformed service and cites to 38 U.S.C. § 4303 to define the term "uniformed services." (Doc. 63 at 13).  The Undersigned is guided by the analysis in *Martin*, *supra*, where the appellate court considered the actual language of the uniformed services exception to the WEP and then turned to other sources.  *Martin*, 903 F.3d at 1163.

To qualify for the uniformed services exception, "a payment [must be] based wholly on service as a member of a uniformed service (as defined in section 410(m) of this title))." 42 U.S.C. § 415(a)(7)(A)(III).  The Eleventh Circuit defined "wholly" by its plain meaning of "'to the full or entire extent' or 'to the exclusion of other things.'" *Martin*, 903 F.3d at 1164 (citation omitted).  The court continued and found that even if read in the broader sense, the term "service" "seems to constitute employment" as a member of a uniformed service. *Id.* (citation omitted).  Finally, the court found the word "as" – in the context of the uniformed services exception – limits what service qualifies for this exception. *Id.* "In the context of the

requirement, 'as' appears to limit the uniformed services exception only to payments for work performed in one's capacity or role as a member of the uniformed services." *Id.* Thus, even though Plaintiff here was a member of a uniformed service at the same time he performed work as a noncovered employee, he received civil service retirement benefits for employment as a dual status technician and not for his role as a member of a uniformed service. *Id.*

> The Eleventh Circuit found that:
>
> The controversy is ultimately over what it means to perform service *wholly* in one's capacity or role *as a member of a uniformed service*. The text of the uniformed services exception is of limited use here; while it cross-references and incorporates definitions across the U.S. Code, at bottom it only clarifies that members of the United States Army National Guard are "member[s] of a uniformed service." It does not further define service performed as a member of the National Guard, and therefore does not resolve whether the civil service payments at issue were wholly for work Martin performed as a member of the National Guard, or whether they were at least partially for work he performed outside of that role.

*Id.* at 1165 (emphasis in original) (footnote omitted) (citation omitted). The Eleventh Circuit also determined that it was not limited to the wording of the WEP exception and looked to the plaintiff's duties and Congress's conception of the dual status technician role within the statutory scheme. *Id.*

As in *Martin*, Plaintiff here describes many duties of the dual status technician role that appear to be military in nature and within the bounds of service as a member of the Air National Guard. *Id.* Plaintiff asserts that unlike the plaintiff in *Martin*, he was subject to military discipline. (Doc. 63 at 1-2). Plaintiff was under the military command of various colonels, he was exposed to Top Secret Military documents, had a military driver's license, had a license to operate ground power equipment, followed the U.S. Air Force's rules, regulations and procedures, attended U.S. Air Force unit training sessions and educational classes, was treated as a full-time soldier, could be called to active duty, carried out military orders, trained reservists,

deployed as a U.S. military reservist Inflight Refueling Technician, wore a uniform Monday through Friday, wore a flight suit when flying, remained a member of the National Guard, and was subject to military rather than civilian force reductions  (Doc. 63 at 2-4, 5, 11, 12, 13-14). These duties appear on their face to be essentially military in nature.

However, "Congress consistently refers to dual status technician employment as a civilian position." *Martin*, 903 F.3d at 1165 (citing 10 U.S.C. § 10216(a)(1)(C), (a)(2)). Plaintiff admits the he "was deemed as a full[-]time dual status federal employee, *an amalgam civilian and military position*. 10 U.S.C. § 10216(a)." (Doc. 63 at 11, 13 (emphasis added)). Plaintiff also admits that "National Guard technicians are excepted service, dual status employees who must become and remain members of the National Guard, maintaining the particular military grade specified for their *civilian positions*." (*Id.* (emphasis added)).  Further, Plaintiff receives two pensions based on his service as a dual status technician and his full-time service in the Air National Guard.  (Doc. 63 at 4).  "Defense Finance and Accounting Service distributes one pension, and the other is paid by the DOD [Department of Defense] through the Office of Personnel Management under the Civil Service Retirement System." (*Id.* at 4-5). Thus, Plaintiff's one pension is through the Civil Service Retirement System.

The Eleventh Circuit found:

> The critical issue is therefore how the word "wholly" interacts with the nature of the dual status technician position.  By its plain meaning, "wholly" limits the payments covered by the uniformed services exception: even if dual status technician employment is *essentially* military, it is not subject to the uniformed services exception if it is not *wholly* military in nature.  Accounting for all of the features of the dual status technician role, we find it difficult to conclude that a dual status technician wholly performs that role as a member of the National Guard.

*Id.* at 1166 (emphasis in original).  Even the title, "dual status technician" "suggests that dual status technicians are employed not just in their capacity as members of the National Guard." *Id.*

Even when the Undersigned considers Plaintiff's arguments that are outside of a plain reading of the text of the uniformed services exception, the Undersigned remains unconvinced that this extrinsic evidence renders his position as a dual status technician "wholly" military in nature. Plaintiff claims that the SSA removed the WEP deduction from other dual status technicians in his unit. (Doc. 63 at 9). Those individuals records are not before the Undersigned and, thus, are not persuasive especially in light of the *Martin* decision. Further, the Eleventh Circuit determined that it would not follow the *Petersen* decision that applied the uniformed service exception to dual status technicians benefits. *Martin*, 903 F.3d at 1168.[6] Plaintiff also attempts to factually distinguish *Martin* from his case by citing to differences in the *Martin* plaintiff's duties versus Plaintiff's duties here. The Undersigned finds that even the factual differences do not render a dual status technician position that is a composite position of both civil and military duties as a "wholly" military position.

Plaintiff also attempts to pick and choose certain definitions in the U.S. Code that places an emphasis on the military nature of the dual status technicians. (Doc. 63 at 18-20). Some of these provisions, however, state that a military technician (dual status) is a federal *civilian* employee and is "authorized and accounted for as a "separate category" of *civilian employees*." 10 U.S.C. § 10216(a)(1)-(2) (emphasis added); (*See also* Doc. 63 at 19). Further, as the court held in *Martin*,

---

[6]  Plaintiff relies on cases outside of the Eleventh Circuit to support his contention that dual status technician positions are military in nature. (Doc. 63 at 15, 16 (citing *e.g.*, *Wright v. Park*, 5 F.3d 586 (1st Cir. 1993); *Stauber v. Cline*, 837 F.2d 395, 396 (9th Cir. 1988); *Illinois Nat. Guard v. Fed. Labor Relations Auth.*, 854 F.2d 1396 (D.C. Cir. 1988); *Am. Fed'n of Gov't Employees AFL-CIO, Local 2953 v. Fed. Labor Relations Auth.*, 730 F.2d 1534 (D.C. Cir. 1984); *New Jersey Air Nat. Guard v. Fed. Labor Relations Auth.*, 677 F.2d 276 (3d Cir. 1982); *Taylor v. Jones*, 495 F. Supp. 1285 (E.D. Ark. 1980), *aff'd in part, rev'd in part*, 653 F.2d 1193 (8th Cir. 1981)). However, *Martin*, 903 F.3d at 1154 is controlling here.

> [T]he legislative history only reflects an effort by Congress to harmonize the treatment of military pensions for active and inactive military service.  It does not show that Congress intended to exclude dual status technicians from the windfall elimination provision.  The legislative history of the National Guard Technicians Act of 1968 also offers no special guidance; on one hand, Congress evidently recognized that the vast majority of technicians would be dual status and that the program would be "organized and operated along military lines," but on the other hand, it consistently emphasized that part of even a dual status technician's work would be *civilian* employment.

*Martin*, 903 F.3d at 1167 (emphasis in original) (footnote omitted).

For the foregoing reasons, the Undersigned finds that the job duties and requirements of dual status technicians do not remove dual status technicians from having their benefits reduced by the WEP, especially in light of the language of the uniformed services exception that includes the word, "wholly."  *See id.* at 1168.  Due to the civilian elements of Plaintiff's employment, the Undersigned finds that Plaintiff's employment was not "wholly" performed as a member of a uniformed service.  *See id.*  Thus, the Undersigned finds that the uniformed services exception does not apply to Plaintiff's case and recommends that the Commissioner's decision be affirmed. *See id.*

**VI.    Recalculation of Earnings**

Plaintiff argues that the SSA erred in not inputting Plaintiff's taxed earnings correctly from the United States Department of Defense and submitted to the Office of Personnel Management ("OPM").  (Doc. 63 at 6).  Plaintiff contends that "SSA wrongfully determined the 1983 WEP should be applied to Bauer's military earned income and U.S.A.F. Air National Guard wages."  (*Id.* at 6-7).  Plaintiff states that he "advised that SSA had commingled his earning for those six years by applying the WEP earnings when it calculated his RIB."  (*Id.* at 7). Plaintiff claims that the 2001 Social Security Statement differs from a 2013 military print-out provided by the Fort Myers Office.  (*Id.* at 6).  Plaintiff further claims that his RIB should be

recalculated to include $55,759.45 in earnings.  (*Id.*).  Plaintiff argues that this matter should be remanded for a recalculation of his earnings paid into the SSA by other employers after Plaintiff's separation in 1995 from the Air National Guard.  (*Id.* at 27).

In the Supplemental Memorandum of Law, the Commissioner argues that Plaintiff did not exhaust his administrative remedies as to the issue of whether Plaintiff's benefits were properly calculated based on alleged errors in his earnings record.  (Doc. 69 at 2).  Alternatively, the Commissioner argues that even if Plaintiff's claim had been exhausted, the claim still fails because SSA used the correct earnings calculation for Plaintiff's RIB.  (*Id.* at 2-3).

The Undersigned addresses the issue of exhaustion of remedies as to the alleged error in Plaintiff's earnings and the calculation of his RIB, and then turns to the merits of the issue.

### A.      Exhaustion of Administrative Remedies

On its face, it is unclear as to whether the issue of the calculation of Plaintiff's benefits is a new and separate issue or whether it is tied to the WEP exception applied to Plaintiff's RIB. Plaintiff states, "Plaintiff's USAF and United States Department of Defense (DOD) *military* taxed earnings from 1957 through 1995, and taxed civilian employment from 1995-2001 being reduced by the WEP, is the crux of his case of the $55,759.45 omission from his 2001 RIB." (Doc. 72 at 8 (emphasis in original)).  However, Plaintiff then states that his "DOD 'CSRS' *civil* 'nontaxed' earnings while holding his full-time military dual status technician position with the Ohio Air National Guard ('OANG') is '*not relevant*' to the $55,759.45 omission, despite the confusing 1991 and 1992 illustrations in Defendant's Supplemental brief incorporating Plaintiff's OANG non-taxed civilian earnings, paid by DOD."  (*Id.* (emphasis in original)).  The Undersigned finds that if this issue is tied to the WEP, then based on this Court's prior ruling, Plaintiff exhausted his administrative remedies.  (*See* Doc. 44 at 21).

14

If this is a new and separate issue, then Plaintiff must establish that he exhausted his administrative remedies as to this issue.  42 U.S.C. § 405(g).  Plaintiff relies on this Court's April 20, 2018 ruling that states as follows:

> Plaintiff **did** file a claim for recomputation of the amount of his retirement benefits. By whatever name it chooses, SSA **did** make a determination of this claim. Whether correctly or not, the SSA **did** give plaintiff a hearing before an ALJ despite the delay in asserting the claim, the ALJ **did** rule in plaintiff's favor, the Appeals Council **did** review that decision, and plaintiff suffered an adverse decision from the Appeals Council.  The Court finds that subject matter jurisdiction for judicial review does exist, and the motion to dismiss will be denied.

(Doc. 44 at 21 (emphasis in original)).  Taken broadly, the above ruling encompasses Plaintiff's request for recomputation of his benefits based on his earnings.  However, the issue raised in Plaintiff's Amended Complaint was whether the SSA improperly applied the WEP deduction to Plaintiff's RIB calculation.  (Doc. 6 at 14-15 (requesting that this matter be remanded to the SSA "with instructions that Plaintiff's benefits are not subject to reduction under the Windfall Elimination Production"); Doc. 44 at 4).  Thus, the Motion to Dismiss (Doc. 19) and subsequent Opinion and Order (Doc. 44) were arguably limited to the WEP issue.

For this reason, the Undersigned revisits the issue of exhaustion of administrative remedies as to the issue regarding the possible error in computation of Plaintiff's RIB.  The parties agree that Plaintiff first raised the issue of whether SSA erroneously comingled non-covered earnings with covered earnings in Plaintiff's Memorandum to the Appeals Council dated July 1, 2015.  (Doc. 69 at 3; Doc. 72 at 3 n.2).  Plaintiff attached as Exhibit F, a 2013 print out of his yearly earnings and requested that the Appeals Council "at the very least remand the case back to the ALJ and/or the SSA, to properly determine Mr. Bauer's monthly retirement benefits *without utilizing the WEP* during the years 1952 through 1961, and 1995 through 2001."  (Tr. at 137 (emphasis in original)).  On September 25, 2015, the Appeals Council considered Plaintiff's

submissions and found that the WEP does apply to Plaintiff's benefits, the ALJ should have dismissed the case, and the ALJ should have dismissed the hearing request.  (*Id.* at 230).  As with the WEP issue, the Appeals Council did have before it the merits of this claim, and arguably considered it when rendering its decision, which allows for judicial review.  (*See* Doc. 44 at 17).

Thus, the Undersigned finds that judicial review of the calculation claim is required.

### B.    Analysis

The standard for review is as follows.  A claimant is generally permitted to present new evidence at each stage of his administrative process.  *Ingram v. Comm'r of Soc. Sec.*, 496 F.3d 1253, 1261 (11th Cir. 2007); 20 C.F.R. §§ 404.900(b), 416.1400(b).  Evidence submitted for the first time to the Appeals Counsel is determined under a Sentence Four analysis. *Id.*  An Appeals Council must consider new and material evidence that "'relates to the period on or before the date of the administrative law judge hearing decision' and must review the case if 'the administrative law judge's action, findings, or conclusion is contrary to the weight of the evidence currently of record.'"  *Id.* (quoting 20 C.F.R. §§ 404.970(b), 416.1470(b)); *see also Washington v. Soc. Sec. Admin.*, 806 F.3d 1317, 1320 (11th Cir. 2015).  New evidence is considered material and thereby warrants remand if "'there is a reasonable possibility that the new evidence would change the administrative outcome.'"  *Washington*, 806 F.3d at 1321.

Here, Plaintiff presented his arguments concerning the allegedly improper calculations of his earnings.  (Tr. at 136-37).  In addition Plaintiff states that he presented:  (1) his 2001 SSA Statement; (2) his military and CSRS W-2s from 1991-1995; (3) former spousal reduction of $10,072.68 yearly from his pension; (4) taxed earnings with civilian employers from 1995-2001; and (5) cancelled checks to the IRS from his C & M Maintenance business for payment into the SSA and Medicare trust funds.  (Doc. 72 at 7).  Thus, arguably, Plaintiff presented this evidence

to the Appeals Council and the Appeals Council had the opportunity to consider it prior to reaching its September 25, 2015 decision.

After careful consideration of this evidence, the Undersigned finds that remand is not warranted for a recalculation by SSA of Plaintiff's earnings.  Plaintiff asserts that his 2001 RIB was "inaccurately determined from the 2001 SSA Statement *military* earnings 'without' factoring in Plaintiff's military DMW credits."  (Doc. 72 at 9).  Plaintiff argues that this "irregularity is undisputable in SSA's certified 2016 yearly earnings attached to [the Commissioner's] Motion to Dismiss and June 3, 2019 print-out attached to its Supplemental Brief."  (*Id.*).  Plaintiff also argues that the Commissioner "confirms Plaintiff's total earnings . . . are $181,845.45 from 1952 – 2001 . . [but] SSA's 2001 Statement's total earning show only $126,844."  (*Id.*).  Plaintiff claims that there is a $55,001.45 omission.  (*Id.*).

The Undersigned agrees that the Certified Earnings Records (whether from 2013, 2015, or 2019) all indicate that Plaintiff's total earnings were $181,845.45.  (Doc. 19-1 at 14-16; Tr. at 160; Doc. 69-1 at 1).  The Undersigned also agrees that Plaintiff's 2001 Social Security Statement shows less taxed Social Security Earnings than the total earnings in the Certified Earnings Records.  (*Compare* Tr. at 160, *with* Tr. at 64).

The Commissioner explained the discrepancy between these two (2) records.  (Doc. 69 at 4-5).  The Certified Earnings Record shows yearly earnings.  (Tr. at 160-62).  The Social Security Statement shows "Your Taxed Social Security Earnings."  (Tr. at 64).  Thus, the Social Security Statement only shows covered earnings from which Social Security taxes were withheld.  (*Id.*).

The yearly earnings column in the Certified Earnings Record includes a column on the far right side entitled "DMW."  (Tr. at 160-62).  The "DMW" column lists amounts ranging from

$100 to $1200. (*Id.* at 160-62). The Commissioner explained that "DMW" stands for deemed military wages. (Doc. 69 at 4). The DMW was created in 1968 to lessen the wage gap between military wages and similar civilian employment. POMS RS 01701.001(A). The military member did not pay Federal Insurance Contribution Act ("FICA") taxes on the additional DMWs. *Id.* at POMS RS 011701.001(B)(1). Congress eliminated the DMW in 2001. POMS RS 011701.001(B)(5).

Taking the amounts listed in the yearly earnings column in the Certified Earnings Record and subtracting the associated DMW from each of these amounts equals the dollar amount of the Taxed Social Security Earnings column in Plaintiff's 2001 Social Security Statement . (*Compare* Tr. 160-62, *with* Tr. at 64).[7]  For example, for the year 1990, the Certified Earnings Record show total earnings of $8,851.38 and a DMW of $1,200.00. (Tr. at 161). Plaintiff's Social Security Statement shows taxed Social Security Earnings of $7,651.00 ($8,851.38 – $1,200.00 = $7,651.00). Thus, these records reflect the same amount of earnings, with one including the DMW and one not. However, Social Security taxes were not deducted from the DMW and, thus, the DMW was not included in Plaintiff's Taxed Social Security Earnings in his 2001 Social Security Statement. *See* POMS RS 011701.001(B)(1).

In addition, Plaintiff's W-2 Wage and Tax Statements support the amount of Taxed Social Security Earnings in the 2001 Social Security Statement. For the year 1992, Plaintiff's W-2 shows income of $5,687.64 and withholding for Social Security taxes of $352.63. (Tr. at 69). Plaintiff's 2001 Social Security Statement shows Taxed Social Security Earnings of $5,687.00 for the year 1992. (*Id.* at 64).

---

[7]  The Social Security Statement includes only whole dollar amounts and does not include any cents. (Tr. at 64).

Thus, the Undersigned finds that Plaintiff has failed to show that the SSA improperly determined his earnings or improperly calculated his RIB based on his taxed Social Security earnings.  Further, Plaintiff failed to show that this evidence presented to the Appeals Council for the first time would change the administrative outcome of this action.

Plaintiff adds one last argument that "[w]ith the destruction of Plaintiff's file, he was further not credited for military earnings while deployed 17 times to Germany in 1967-1974. (Doc. 72 at 10).[8]  The Commissioner argues that "[a]ny possible destruction of a paper file is irrelevant to questions concerning the reported wages for Plaintiff.  Plaintiff's reported earnings are maintained in SSA electronic records and are not exclusively part of his paper administrative record."  (Doc. 69 at 8).  Social Security maintains earnings records as shown by the Commissioner attaching a June 3, 2019 Certified Earnings Record that mirrors the May 6, 2013 Certified Earnings Record in the Administrative Record.  (*Compare* Doc. 69-1 at 1-3, *with* Tr. at 160-62).  Thus, the Undersigned finds that although the destruction of the record in this case is not ideal, the remaining record is sufficient to determine the issue regarding whether the SSA used correct earnings to calculate Plaintiff's RIB.

**VII.   Conclusion**

Upon consideration of the submission of the parties and the administrative record, the Undersigned finds that the decision of the Commissioner is supported by substantial evidence and the uniformed services exception to the windfall elimination provision does not apply to Plaintiff's retirement insurance benefits.  Further, the Undersigned finds the Commissioner's calculation of Plaintiff's earnings and RIB are supported by substantial evidence.

---

[8]  Although unclear, if Plaintiff is attempting to argue that the WEP should not have been applied to these earning records, the Undersigned finds that based upon *Martin*, *supra*, no exception to the WEP applies to Plaintiff's earning from being a dual technician.

It is **RESPECTFULLY RECOMMENDED:**

The decision of the Commissioner be **AFFIRMED** and find that the uniformed services exception to the windfall elimination provision does not apply to Plaintiff's retirement insurance benefits pursuant to sentence four of 42 U.S.C. § 405(g) and that the Commissioner calculation of Plaintiff's earnings and RIB are supported by substantial evidence.

Respectfully recommended in Chambers in Ft. Myers, Florida on June 28, 2019.

_____

MAC R. MCCOY
UNITED STATES MAGISTRATE JUDGE

## NOTICE TO PARTIES

A party has fourteen days from this date to file written objections to the Report and Recommendation's factual findings and legal conclusions.  A party's failure to file written objections waives that party's right to challenge on appeal any unobjected-to factual finding or legal conclusion the district judge adopts from the Report and Recommendation.  *See* 11th Cir. R. 3-1.

Copies furnished to:

Counsel of Record
Unrepresented Parties